**D.W.S. WASHINGTON HOLDINGS, INC., Plaintiff,**

v.

**Timothy JACKSON, et al., Defendants.**

**Civ. A. No. 88–3652–GHR.**

United States District Court, District of Columbia.

May 18, 1990.

Robert E. Greenberg, Mitchell B. Weitzman, Janet A. Zuckerman, Deso & Greenberg, Washington, D.C., for plaintiff.

Barry D. Trebach, Gilberg & Kurent, Washington, D.C., for defendants Timothy E. and June R. Jackson.

Steven M. Nemeroff, Wortman, Nemeroff and Bulitt, College Park, Md., for defendants Yves and Clelia Courbois.

## MEMORANDUM DECISION AND ORDER

REVERCOMB, District Judge.

The plaintiff, D.W.S. Washington Holdings, Inc. ("Landlord"), has filed the instant suit against the defendants, Timothy E. Jackson, June R. Jackson, Yves Courbois and Clelia Courbois ("Guarantors"), who are guarantors of a commercial lease ("Lease") that was entered into between the plaintiff and Epi d'Or, Inc. ("Epi d'Or" or "Tenant"), a restaurant and District of Columbia corporation. The plaintiff seeks damages against the Guarantors arising out of the Tenant's default on the Lease. This matter is before the Court pursuant to the plaintiff's motion for summary judgment and the defendants' motion for partial summary judgment.

### A. Background

On April 22, 1987, the plaintiff entered into a five-year lease with Tenant of the premises located at 1220 19th Street to commence on July 1, 1987. All of the defendants signed a Guaranty of Lease Agreement dated November 1986 ("Guaranty"). This Guaranty unconditionally and absolutely bound each of the Guarantors, jointly and severally, to make full, prompt and complete payment of any unpaid rent or other charges required of the Tenant under the Lease.[1]

Within the first month after the inception of the lease term, Epi D'Or fell into arrears in its rent payments. On February 13, 1988, counsel for plaintiff forwarded a letter to Tenant which stated that

pursuant to Section 23 [of the lease [2]], you are hereby notified that on the third day following the receipt of this letter, your lease shall be deemed terminated and you shall be obligated to immediately quit the premises and surrender the space to the landlord.

On April 4, 1988, a judgment was obtained in the Superior Court of the District of Columbia against the Tenant for possession and $45,223.04 in damages, plus counsel fees.

The plaintiff seeks judgment against the Guarantors for $212,535.85 which repre-

---

1. The Guaranty provides, in pertinent part:
   the undersigned, Yves Courbois, Clelia Courbois, Timothy E. Jackson, and June R. Jackson, (individually a "Guarantor" and collectively the "Guarantors"), hereby unconditionally and absolutely each fully guarantee unto Landlord, its successors and assigns, the full, prompt and complete payment by Tenant of any Base Rent, Additional or Adjustment Rent, increases in taxes and assessments upon the Leased Premises, and any other payments or charges, however characterized, required to be made or paid by Tenant pursuant to the Lease, and the prompt, faithful and complete performance and observance by Tenant of all of the terms, covenants and conditions of the Lease on Tenant's part to be performed or observed.

   \*    \*    \*    \*    \*    \*

   This Guaranty shall not be limited to any amount or time and shall at all time include the full indebtedness and all other liability and obligation of Tenant, or any assignee or subtenant of Tenant, to Landlord under the Lease.

2. Subsection B of section 23 of the Lease provides:

   B. *Remedies Upon Default.* Upon the occurrence of Default, Landlord shall have the right, at its election, then or at any time thereafter either:

   (1) To give Tenant written notice of Landlord's intent to terminate this Lease on the date of the notice or on any later date specified in the notice, and on such date Tenant's right to possession of the premises shall cease and this Lease shall thereupon be terminated; or

   (2) Without demand or notice, to reenter and take possession of all or any part of the Premises, and expel Tenant and those claiming through Tenant, and remove the property of Tenant and any other person, either by summary proceedings or by action at law, in equity or otherwise, without being deemed guilty of trespass and without prejudice to any remedies for nonpayment or late payment of rent or breach of covenant.

sents all damages through January 1, 1989 on which date a replacement tenant began paying rent.

## B. *Res Judicata*

■ The defendants contend that the plaintiff is precluded from bringing the instant action on the ground of res judicata. Specifically, the defendants argue that the plaintiff is precluded from seeking any damages beyond the amount of $45,233.04, which was the award plaintiff obtained in its April 4, 1988 judgment for possession and damages, because a claim for damages, including the amount of rent due, must be brought in a single action.

> The doctrine of res judicata provides that a judgment between the same parties and their privies is a final bar to any other suit upon the same course of action, and is conclusive, not only as to all matters that have been decided in the original suit, but for all matters which with propriety could have been litigated in the first suit....

*Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92, 94 (1961); *see also Black v. Tamamian*, 49 A.2d 547 (D.C.1946).

In the instant case, the defendants contend that the plaintiff could have sued for all of its damages, including future rent due under the Lease, at the time that the plaintiff obtained its judgment for possession and arrearages. The Lease provision upon which the defendants rely provides:

> C. *Liability of Tenant.* If Landlord terminates this Lease or reenters the Premises pursuant to Subsection B above, Tenant shall remain liable (in addition to accrued liabilities) for (i) any unpaid rent earned at the time of termi-

nation ... *[and] (ii) Base Rent, Additional Rent and any other sums provided for in this Lease until the date this Lease would have expired had such termination not occurred* ... less (v) the net proceeds received by Landlord from any reletting prior to the date this Lease would have expired if it had not been terminated.

However, contrary to the assertion of defendants, the plaintiff could not have sued the defendants for the rent under the entire remaining lease period at the time it obtained judgment for possession and arrearages. Although subsection C(ii) clearly provides that the plaintiff can continue to hold defendants liable for rent which accrues during the term that otherwise would have remained under the Lease had it not been terminated, subsection C further provides that the future rent cannot be accelerated upon default and that the defendants' liability arises only at the end of each successive month: "Tenant agrees to pay to Landlord the amount so owed above [in subsection C(ii) ] *for each month during the Term, at the end of each such month.*" Moreover, the Lease specifically provides that defendants' liability for such rent is reduced by the amount that the Landlord receives from reletting the premises.[3] At the time that the plaintiff sued for possession and arrearages it, of course, had not relet the premises and accordingly had no idea what the extent of its future damages would be from the Tenant's default on the Lease.

Apparently anticipating that the Tenant may contend that a suit for damages arising from a failure to pay future rent must be brought in a single action, the Lease

---

**3.** The plaintiff could have waived its rights under subsection C and sued for liquidated damages at the time it brought suit for possession and arrearage, but such a decision was entirely at the Landlord's discretion which it declined to exercise. Subsection D, which provides for Liquidated Damages, provides in pertinent part:

> If Landlord terminates this Lease pursuant to Subsection B above, Landlord shall have the right at any time, at its sole option, to require Tenant to pay to Landlord on demand, as liquidated and agreed final damages in lieu of Tenant's liability under Subsection C above,

(i) the then present cash value of the Base Rent, Additional Rent and all other sums which would have been payable under this Lease from the date of such demand to the date when this Lease would have expired if it had not been terminated, minus (ii) the then cash rental value of the Premises for the same period; provided, however, that if such damages are limited by law to a lesser amount, Landlord shall be entitled to prove as liquidated damages the maximum amount permitted by law.

further specifically provides: "Any suit brought by Landlord to enforce collection of such amount for any one month shall not prejudice Landlord's right to enforce the collection of any such amount for any subsequent month. * * * Tenant's liability shall survive the institution of summary proceedings and the issuance of a warrant thereunder."

The caselaw that the defendants rely upon does not require a different result and is in fact consistent with the plaintiff's position. The defendants contend that under District of Columbia law, once a landlord elects to terminate the lease, the tenant is not liable for rent thereafter. The defendants rely upon *Ostrow v. Smulkin*, 249 A.2d 520 (D.C.1969), where the court held that once the landlord terminates a lease and obtains a judgment of possession, then the tenant is no longer liable for subsequent rent. *Id.* at 522. The court stated that

> when the tenants received notice of the landlord's action for possession, did not oppose it, let the judgment go by default, and then notified Davis Company, the managing agent, that they no longer had any interest in the property, we think, as a matter of law, that there was a surrender of possession in compliance with the Landlord's demand, and this constituted a termination of the Lease and the tenants were not liable for rent thereafter.

*Id.*

The defendants' reliance on *Ostrow* is inapposite for the simple reason that they specifically agreed, as Guarantors of the Lease, to remain liable for future rent that would otherwise accrue under the Lease notwithstanding its termination. In *Ostrow* itself the court recognized that the landlord can continue to hold the tenant liable for damages which accrue after the landlord obtains a judgment for possession and termination of the lease:

> Unless a landlord accepts a tender or reenters after abandonment, the tenant's obligation to pay rent continues. [footnote omitted.] And, depending upon the circumstances and contractual provisions of the lease, the tenant may be liable for

damages even after the landlord has retaken possession, but this liability is for damages for breach of contract and not for rent.

249 A.2d at 521. As cases subsequent to *Ostrow* have made clear:

> The point of [the *Ostrow* holding] is that a landlord may not, *without a covenant in a lease imposing liability for damages after eviction* ... demand continued payments. [Citations omitted.]

*LJC Corp. v. Boyle,* 768 F.2d 1489 (D.C.Cir. 1985) (emphasis added). The fact of the matter, which the defendants steadfastly ignore, is that the lease in the instant case contains a provision, as discussed above, which holds the Tenant liable for the damages that the Landlord suffers from the loss of future rent after the termination of the lease due to Tenant's default.

### C. Mitigation of Damages

The defendants contend that even if the instant suit is not precluded on the ground of res judicata, the plaintiff has failed to mitigate its damages and, as a factual matter, summary judgment is accordingly inappropriate. *See Satin v. Buckley,* 246 A.2d 778, 781 (D.C.1968) (landlord required to make a reasonable effort to relet premises and mitigate damages); *McIntosh v. Gitomer,* 120 A.2d 205 (D.C.1956) (same). The defendants bear the burden of coming forward with the facts necessary to support their claim. *Brewer v. Drain,* 192 A.2d 532, 534 (D.C.1963).

The plaintiff's duty to mitigate does not arise until the date that it obtained its judgment for possession. *See Simons v. Federal Bar Building Corp.,* 275 A.2d 545, 550 (D.C.1971); *McIntosh v. Gitomer,* 120 A.2d at 206. To expect the plaintiff to relet its premises before it has a judgment of possession is simply absurd. Until the landlord has a judgment of possession and the tenant is in fact evicted the landlord simply cannot guarantee to any prospective tenant that the premises will be available for occupancy.

The only facts with which the defendants have come forward to support their assertion arose *prior* to the time that the plain-

tiff had a duty to mitigate. The defendants bring forth no facts and make no assertion that the plaintiff's conduct since the date that it obtained its judgment for possession and arrearages was anything but a reasonable exercise of its duty to mitigate.

Accordingly, summary judgment on the issue of damages, a sum certain which the plaintiff has supported in the record with affidavits, is appropriate. *See Bennett v. Martin–Trigona,* 686 F.Supp. 6, 8 (D.D.C. 1988) (court granted damages in a summary judgment disposition where the damages constituted fees for services rendered and hence could be measured to a sum certain through the use of an affidavit).

This Court finds all of the defendants' other arguments without merit and accordingly it is hereby

ORDERED that the plaintiff's motion for summary judgment be, and the same hereby is, GRANTED; and it is further

ORDERED that the defendants' motion for partial summary judgment be, and the same hereby is, DENIED.

### JUDGMENT ORDER

Pursuant to the Memorandum Decision and Order of May 18, 1990 in which this Court granted the plaintiff's motion for summary judgment and denied the defendants' motion for partial summary judgment, it hereby is

ORDERED that JUDGMENT be, and the same hereby is, ENTERED in favor of the plaintiff and against the defendants, jointly and severally, in the amount of two hundred twelve thousand five hundred thirty-five dollars and eighty-five cents ($212,-535.85).